IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DOUGLAS A. WASHBURN and          :
EXTREME HEATING AND
COOLING, LTD.,
        Plaintiffs and               :
Counterclaim Defendants,

                                    :

      v.

                                      :     Case No. 3:21-cv-235

ONE HOUR AIR CONDITIONING
FRANCHISING, SPE, LLC,                     JUDGE WALTER H. RICE
        Defendant and               :
Counterclaim Plaintiff,

        and                         :

CLOCKWORK IP, L.L.C.,                :
           Intervenor and
Counterclaim Plaintiff
                                      :

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN
PART DEFENDANT AND COUNTERCLAIM PLAINTIFF AND INTERVENOR
AND COUNTERCLAIM PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION (DOC. #12)

---

This matter is before the Court upon a Motion for Preliminary Injunction,

Doc. #12, filed by Defendant and Counterclaim Plaintiff, One Hour Air

Conditioning Franchising SPE, LLC ("One Hour"), the franchisor of the One Hour

Heating and Air Conditioning franchise system, and Intervenor and Counterclaim

Plaintiff, Clockwork IP, L.L.C. ("Clockwork"). Clockwork is the owner of certain federally registered One Hour Heating & Air conditioning trademarks, service marks, logos and derivations thereof ("Marks"). Clockwork licenses its Marks to One Hour which, in turn, licenses them to its franchisees.

One Hour and Clockwork seek injunctive relief against Plaintiffs, Douglas A. Washburn ("Washburn"), the owner and guarantor of the performance of Extreme Heating and Cooling, Ltd. ("Extreme"), a franchisee in two expired franchise agreements (collectively, the "Washburn Parties" or Plaintiffs) with One Hour.

One Hour and Clockwork move this Court, pursuant to Fed. R. Civ. P. 65(a), to enjoin Plaintiffs' alleged violations of their (1) post-term obligations in the franchise agreements and (2) use of Clockwork's proprietary Marks and trade name in violation of the Lanham Act, 15 U.S.C. §§ 1114, et seq. The Washburn Parties have filed a Response, Doc. #18, and One Hour and Clockwork have filed a Reply. Doc. #19. On November 15, 2021, oral argument was held.[1] The Court has also considered Supplemental Authority filed by One Hour and Clockwork, Doc. #36, *The Cleaning Authority, LLC v. Hunsberger Enterprises, Inc.*, No. 1:20-cv-03360-CCB (D. Md. June 29, 2022), Dkts. 40-41, the Response of Plaintiffs, Doc. #40, and Reply, Doc. #39, as well as a Second Notice of Supplemental Authority, Doc. #40, filed by Defendants, *H.H. Franchising Sys., Inc. v. Caresmart Solutions, Inc.*, No. 1:21-cv- 575, Dkt. 32 (S.D. Ohio Sep. 15, 2022). Doc. #40.

---

[1] The parties agreed that an evidentiary hearing was unnecessary and that this motion could be decided based upon the matter then in the record following oral argument.

## I. Background and Procedural History

In 2004, Douglas A. Washburn ("Washburn") started Extreme Heating and Cooling, Ltd. ("Extreme"), a heating, ventilation and air conditioning ("HVAC") company. Doc. #18-1, PageID#685. In February 2009, Extreme signed a ten-year franchise agreement with One Hour Air Conditioning Franchising, L.L.C.[2] for the Beavercreek, Ohio, area ("the Beavercreek Agreement" or "Franchise Agreement OH246"). *Id.*; Doc. #12-3. One Hour, a franchisor, was the developer and owner of a "distinctive System" designed to provide residential HVAC service, maintenance repairs and equipment replacement under "the service Marks One Hour Air Conditioning & Heating and One Hour Heating and Air Conditioning and associated Marks, logos and designs . . ." ("Marks").[3] Doc. #12-3, PageID#435. In addition to the Marks that could be used in Extreme's business, the One Hour System included manuals and guidelines (the "Manuals"), that provided "specific guidance, procedures, methodology, and standards for operating." Doc. #12-2, PageID#429. The System also included, among other things, advertising, publicity

---

[2] One Hour Air Conditioning Franchising SPE LLC ("One Hour"), a Delaware limited liability company with its principal place of business in Maryland, has been substituted as the named Defendant in place of One Hour Air Conditioning Franchising, L.L.C. Doc. #10, PageID#256.

[3] As defined by One Hour and Clockwork, "Marks" are federally registered One Hour Heating & Air Conditioning trademarks, service Marks, logos, and derivations thereof owned by Clockwork. Among those registered Marks are Registration Nos. 2,521,070, 2,916,944, 3,033,873, 3,357,727, and 3,530,593. Each of these registrations is asserted by One Hour to be in full force and effect and is incontestable pursuant to 15 U.S.C. § 1065. Clockwork licenses these Marks to One Hour, which in turn licenses them to One Hour Heating & Air Conditioning franchisees. Doc. #12-2, PageID#428.

and training programs. Doc. #12-3, PageID#435. Upon signing the Beavercreek Agreement, Extreme began operating as Extreme One Hour Heating and Air Conditioning.

The Beavercreek Agreement, which is governed by Florida law, designated the "Territory" for the franchise as Beavercreek, Ohio. Doc. #12-3, PageID##438 and 476. Washburn personally guaranteed that Extreme would perform "every undertaking, agreement and covenant set forth" in the Beavercreek Agreement and also agreed to be "personally bound by" and "liable for the breach of each and every provision" in the agreement. Doc. #12-3, PageID#477. The agreement also contained a covenant entitled "Post-Term Non-Competition" which prohibited the Washburn Parties from owning or being involved in a "Competitive Business" for 24 months after termination or expiration of the franchise agreement. *Id.*, PageID#461. The Beavercreek Agreement defined "Competitive Business" as "a business that offers residential air conditioning and heating services competitive with those offered, franchised or licensed by" One Hour in "the Territory or adjacent Territory." *Id.*, at PageID#460. "Territory" is defined in the agreement as the "geographic area stated on Exhibit A" which lists the "Territory" as Beavercreek, Ohio. *Id.*, PageID#476. This exhibit also lists nine zip codes. *Id.*

As the business grew, Washburn discussed plans to expand his franchise with Diane Perry, a One Hour franchise sales representative. Doc. #18-1, PageID#685. His business plan involved expanding Extreme's franchise south of

Dayton, Ohio, to I-275 north of Cincinnati, Ohio, and specifically included the city of Lebanon, Ohio. *Id.*, PageID#685-686.

In October 2010, while in attendance at a One Hour national convention in Dallas, Texas, Washburn entered into a second ten-year franchise agreement with One Hour for the Springboro, Ohio, area ("the Springboro Agreement" or "Franchise Agreement OH0311"). *Id.*; Doc. #12-4.  The Springboro Agreement was governed by Maryland law and also included the One Hour System for use in Extreme's business as well as use of the Marks, advertising, publicity and other marketing and training programs. Doc. #12-4, 484.  The "Territory" for this agreement was defined in Exhibit A as Springboro, Ohio. *Id.*, PageID##484 and 526.  The exhibit listed six different zip codes. *Id.*, PageID#526. Washburn personally guaranteed Extreme's performance and agreed to be "personally bound by" and "liable for" its breach of any provision. *Id.*, PageID#527.  The Springboro Agreement also contained a "Post-Term Non-Competition" covenant. *Id.*, PageID##509-510.  This covenant, like the covenant in the Beavercreek Agreement, prohibited Plaintiffs from owning or being involved with a Competitive Business for 24 months after termination.  Unlike the Beavercreek Agreement, a Competitive Business" in the Springboro Agreement was defined as a "business that offers residential air conditioning and heating products or services competitive with or similar to those offered by One Hour, its affiliates, its franchisees, its licensees or its affiliates' franchisees, licensees, and members." *Id.*, at PageID#460. This agreement also stated that the Washburn Parties cannot

5

"own or be involved with a Competitive Business that is located in or serves customers within" Springboro, Ohio, "or any zip code" where Extreme "had Franchised Business customers during the Term" of the agreement. *Id.*, PageID#510.

Several days after signing the Springboro Agreement in Dallas, Texas, Washburn received a complete copy of it in the mail and discovered it did not include a zip code for Lebanon, Ohio. Doc. #18-1, PageID#686.  He contacted Diane Perry who agreed with him that the city of Lebanon, zip code 45036, was to have been included in the Springboro Agreement as part of Extreme's territory. Although Washburn never received a "corrected agreement" that included the zip code for Lebanon, Ohio, in late 2010 and early 2011 Extreme began to advertise and service customers in this territory using the name Extreme One Hour Heating and Air Conditioning.  He also spent "at least $50,000" to renovate a leased facility just north of the city of Lebanon and opened the building for business in mid-2011. Around this same time, Extreme obtained a "lucrative" contract with Lowe's Home Improvement in Lebanon, Ohio. *Id.*

In the fall of 2010, One Hour converted a private Cincinnati-area HVAC company into a corporate-owned location and in March 2012, it asserted that the territory in zip code 45036, including the city of Lebanon, Ohio, belonged to it as a "retail territory" and not to the Washburn Parties.  Doc. #18-1, PageID#687; Doc. #18-3, PageID#808.  Based on One Hour's position that zip code 45036 was not part of the Springboro Agreement and because Washburn did not want a lawsuit

6

with a national franchisor, Washburn closed the leased facility in Springboro in 2012 and cancelled the Lowe's contract. Doc. #18-1, PageID#688.

Although Extreme continued to operate as a One Hour franchise, from 2013 to 2020 it limited its involvement with One Hour to only occasional telephone calls from franchise consultants. During this same time, Washburn unsuccessfully attempted to reopen discussions with One Hour concerning Extreme's right to operate in the 45036 territory. Doc. #18-1, PageID#689.

In the fall of 2020, the Beavercreek Franchise Agreement and Springboro Franchise Agreement ("Franchise Agreements" or "Agreements") were set to expire. Because of this, Washburn and One Hour agreed to extend the Agreements pending discussions concerning renewal terms. Doc. #18-1, PageID#689. During these negotiations, Extreme attempted to transfer its database of customers, including their equipment and service history, from One Hour's platform, Successware, to a new platform. *Id.*, PageID##689-691. It requested that Successware provide it a copy of its customer data so it could have "an in-house backup to assist with the transition" to its new platform. *Id.* Extreme's request was denied. It was told that it could not access this data until its franchise with One Hour was renewed. *Id.* Extreme was forced to spend employee time and "over $137,000 in IT consulting fees to manually export customer information" into the new platform. *Id.*

On July 16, 2021, counsel for the Washburn Parties sent One Hour a "Notice of Termination and Demand Letter." Doc. #12-2, PageID#430. The letter stated that

7

discussions were over and that Extreme One Hour would no longer operate as a One Hour franchise. *Id.* It demanded, among other things, a return of its customer data and payment of damages for One Hour's failure to provide the Lebanon, Ohio, territory in the Springboro Agreement. Doc.#12-5, PageID##532-533.  Since signing the Beavercreek Agreement in February 2009, Extreme has paid over $1,100,000 in royalties to One Hour. Doc. #18-1, PageID#692.

On August 27, 2021, the Washburn Parties filed a Complaint in the Common Pleas Court of Greene County, Ohio.  One Hour properly removed the case to this Court pursuant to 28 U.S.C. §§ 1441, 1446 and 1332.  Thereafter, the parties stipulated that Clockwork IP LLC ("Clockwork"), an affiliate of One Hour and the owner of the One Hour Air Conditioning trademarks, could intervene and assert a counterclaim for infringement for Extreme's alleged use of its Marks "after the expiration of the Franchise Agreements." Doc. #6.  Plaintiffs filed an Amended Complaint against One Hour seeking a declaratory judgment that the 24 month "Post-Term Non-Competition" covenants in the Franchise Agreements were unenforceable. Doc. #7.  They also alleged two claims for breach of contract for One Hour's refusal to turn over Extreme's customer database and for their alleged failure to permit Extreme to operate in zip code 45036, Lebanon, Ohio.  The fourth claim in the Amended Complaint alleged a claim for misappropriation of trade secrets. *Id.*

One Hour filed an Answer to the Amended Complaint and it and Clockwork asserted a Counterclaim against the Washburn Parties.[4] Doc. #10. The Counterclaim alleged four counts. Count I alleged a breach of contract of the Franchise Agreements, Count II alleged a breach of contract against Washburn based on his guaranties of performance of the Franchise Agreements and Count III alleged trademark infringement under § 32 of the Lanham Act, 15 U.S.C. § 1114, and applicable state law. Count IV of the Counterclaim alleged unfair competition against Plaintiffs for unauthorized use of One Hour's trademarks and trade names in violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(a), and applicable state law. *Id.*

On September 14, 2021, One Hour filed its Motion for Preliminary Injunction. Doc. #12.

## II.  Standard of Review

A preliminary injunction is an extraordinary equitable remedy "intended to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Because discovery has either not occurred or is incomplete, the movant "is not required to prove his case in full at a preliminary injunction hearing." *S. Glazer's Distribs. of Ohio, LLC*

---

[4] Although One Hour is the Defendant and franchisor of the Franchise Agreements and Clockwork is the owner of the One Hour Air Conditioning trademarks, Doc. #6, the four counts in the Counterclaim are alleged jointly under the name "One Hour." Doc. #10, PageID#263.

*v. Great Lakes Brewing Co.*, 860 F.3d 844, 848 (6th Cir. 2017 (citing *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007). A party must, however, make a clear showing that it is entitled to such relief. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The Court's granting of a preliminary injunction is guided by four factors: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm absent an injunction; (3) whether the balance of the equities tips in favor of the issuance of a preliminary injunction; and (4) whether the injunction is in the public's interest. *Id.*, at 20; *RECO Equipment, Inc. v. Wilson*, No. 20-4312, 2021 WL 5013816, at *2 (6th Cir. Oct. 28, 2021).

Although the four factors are balanced "and are not prerequisites to be met," *Certified Restoration*, 511 F.3d at 542, One Hour[5] "must show at least some likelihood of success on the merits and that it likely will suffer irreparable harm" if the Washburn Parties are not enjoined. *RECO Equipment*, 2021 WL 5013816, at *2 (citations omitted). In analyzing whether the balance of the equities tips in favor of the issuance of a preliminary injunction, the Court considers not only the harm that One Hour would suffer if Plaintiffs are not enjoined, but also the harm that Plaintiffs would suffer if an injunction is granted.

The harm, as alleged by One Hour, concerns the Washburn Parties' breach of the post-expiration obligations in the Franchise Agreements. These obligations

---

[5] Unless indicated otherwise, all references to One Hour in this portion of the Court's Decision and Entry include Clockwork.

consist of the "Post-Term Non-Competition" covenant, other post-termination obligations in the agreements that One Hour asserts provide additional protection to the franchise and Plaintiffs' alleged infringement of One Hour's Marks.

The harm to the Washburn Parties includes the closing of a local business with 19 employees, Extreme defaulting on its government-backed loans, loss of its credit relationships with vendors and ending Washburn's income.

Finally, the Court considers the harm that may result to third parties. *Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 568 (6th Cir. 1982) ("The irreparable injury [One Hour] will suffer if their motion for injunctive relief is denied must be balanced against any harm which will be suffered by [others] as a result of the granting of the injunctive relief.").

One Hour moves this Court to enjoin Plaintiffs from: (1) their continued operation of an Extreme Heating and Air Conditioning business in violation of the covenants not to compete in their expired Franchise Agreements and (2) using One Hour's marks and tradename in its operation of an Extreme Heating and Air Conditioning business in violation of the Lanham Act. Doc. #12, PageID#395. One Hour also moves the Court for an Order requiring Plaintiffs "to comply with the post-expiration provisions of the Franchise Agreements." *Id.* The Court will analyze each claim separately utilizing the four factors for a preliminary injunction. *RECO Equipment,* 2021 WL 5013816 at *2

## III. Legal Analysis

### A. Likelihood of Success on the Merits

To show likelihood of success on the merits, One Hour "must show more than a mere possibility of success." *Certified Restoration*, 511 F.3d at 543. "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Medical Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000).

#### 1. Count I: Breach of Contract - Franchise Agreements

One Hour asserts in Count I of their Counterclaim a breach of contract claim based on Plaintiffs' alleged violations of their post-termination obligations in the Franchise Agreements. The parties agree the Beavercreek Agreement and the Springboro Agreement are valid contracts under Florida law and Maryland law, respectively, and Plaintiffs do not challenge the requirements to prove a breach of contract claim under Florida law, *Asset Mgmt. Holdings, LLC v. Assets Recovery Ctr. Invs., LLC,* 238 So. 3d 908 (Fla. Dist. Ct. App. 2018) (elements of a breach of contract claim are a valid contract, breach and damages) and Maryland law, *Taylor v. NationsBank*, 365 Md. 166, 776 A.2d 645 (2001) ("contractual obligation" and breach required for breach of contract claim). Accordingly, the Court will analyze, under the framework of Fed. R. Civ. P. 65(a), Plaintiffs' alleged breach of the Post-Term Non-Competition covenant in the Franchise Agreements, followed by their alleged breach of the additional post-termination obligations under the agreements.

### a. Count I: Breach of Contract – Post-Term Non-Competition Covenant

The Springboro Agreement's Post-Term Non-Competition covenant[6] is enforceable under Maryland law "'. . . if the restraint is confined within limits which are no wider as to area and duration than are reasonably necessary for the protection of the business of the employer and do not impose undue hardship on the employee or disregard the interests of the public.'" *Becker v. Bailey*, 299 A.2d 835, 838 (Md. 1973) (internal citations omitted). Because "no sure measuring device designed to calculate" when the restrictions are enforced exists, a "determination must be made based on the scope of each particular covenant itself. *Id.* Maryland courts also consider whether an employer's confidential information, trade secrets and goodwill will be protected through the enforcement of restrictive covenants. *ComRent Int'l, LLC v. Smidlein*, RDB-20-3356, 2021 WL 252554, at *7 (D. Md. Jan. 26, 2021) (and cases cited therein). If the scope of the covenant is reasonable on its face, the court examines the facts and circumstances of the individual case. *Millward v. Gerstung Int'l Sport Ed., Inc.* 268 Md. 483, 302 A. 2d 14,16 (1973). Relevant considerations in this examination include

> whether the person sought to be enjoined is an unskilled worker
> whose services are not unique; whether the covenant is necessary to

---

[6] The restrictive covenant in the Springboro Agreement states: "Post-Term Non-Competition. For a period of 24 months after termination, expiration, or Transfer of this Agreement, Franchisee (and its Owners if Franchisee is a business entity) agrees that it (or they) will not own or be involved with a Competitive Business that is located in or serves customers within the Territory or any zip code where Franchisee had Franchised Business customers during the Term and any Renewal Term." Doc. #12-4, PageID#509-510.

prevent the solicitation of customers or the use of trade secrets, assigned routes, or private customer lists; whether there is any exploitation of personal contacts between the employee and customers; and, whether enforcement of the clause would impose undue hardship on the employee or disregard the interests of the public.

*Budget Rent A Car of Washington, Inc. v. Raab*, 268 Md. 478, 482, 302 A.2d 11, 13 (1973).

The Beavercreek Agreement's Post-Term Non-Competition covenant[7] in the Beavercreek Agreement, is enforceable if it complies with Fla. Stat. § 542.335, "valid restraints of trade or commerce." Under this statute, the restriction must be "reasonable in time, area[,] and line of business" and "signed by the person against whom enforcement is sought." Fla. Stat. § 542.335(1). The person seeking enforcement must also "plead and prove the existence of one or more legitimate business interests,"[8] Fla. Stat. § 542.335(1)(b), and show that the restriction is "reasonably necessary to protect the legitimate business interest or interests." Fla. Stat. § 542.335(1)(c). If a *prima facie* case is established that the restrictive

---

[7] The restrictive covenant in the Beavercreek Agreement states: "Post-Term Non-Competition. For a period of 24 months after termination or expiration of this Agreement, Franchisee (and its Owners if Franchisee is a business entity) agrees that it (or they) will not own or be involved with a Competitive Business; provided that this provision shall not apply if Franchisee terminates this Agreement within the first 24 months after the Effective Date of this Agreement under Section 16.1." Doc. #12-3, PageID#461.

[8] "The term 'legitimate business interest' includes, but is not limited to: 1. Trade secrets, as defined in § 688.002(4). 2. Valuable confidential business or professional information that otherwise does not qualify as trade secrets. 3. Substantial relationships with specific prospective or existing customers, patients, or clients. 4. Customer, patient, or client goodwill associated with: a. An ongoing business or professional practice, by way of trade name, trademark, service mark, or "trade dress"; b. A specific geographic location; or c. A specific marketing or trade area. 5. Extraordinary or specialized training." Fla. Stat. § 542.335(1)(b).

covenant is reasonably necessary to protect a legitimate business interest, the burden shifts to the person against whom the enforcement is sought to show that the restriction is "overbroad, overlong, or otherwise not reasonably necessary." Fla. Stat. Ann. § 542.335(1)(c). Florida law permits a court to modify a covenant so that it provides "only the relief reasonably necessary to protect such interest or interests." *Id.*

Plaintiffs argue that One Hour cannot show a likelihood of success on the merits for the two Post-Term Non-Competition covenants in the Franchise Agreements. They assert that the One Hour System is not a "unique proprietary system" but is merely one of "best practices," lacking any trade secrets or confidential information.[9] They contend that under Maryland law, the restrictive covenant in the Springboro Agreement fails under *Budget Rent A Car*, 268 Md. at 482, since the skills One Hour seeks to restrain are not "unique" and that under Florida law, the restrictive covenant in the Beavercreek Agreement is unenforceable since it lacks a "legitimate business interest" required by Fla. Stat. § 542.335(1)(b). Plaintiffs also argue that One Hour cannot show success on the merits since it breached the Franchise Agreements and violated the equitable doctrine of unclean hands.

A review of the Post-Term Non-Competition covenant in the Springboro Agreement shows that it is reasonable on its face. It is limited as to time, 24

---

[9] Plaintiffs do not challenge the duration or geographic scope of the Post-Term Non-Competition covenants in either of the Franchise Agreements.

months, which Maryland courts have found to be reasonable. *Occupational Health Centers of the Sw., P.A. v. Toney,* No. CV ELH-17-0975, 2017 WL1546430, at *12 (D. Md. Apr. 28, 2017) (preliminary injunction sustained for two-year restrictive covenant); *PADCO Advisors, Inc. v. Omdahl*, 179 F. Supp. 2d 600, 606–07 (D. Md. 2002) (restrictive covenant of two years enforced). Additionally, the geographic scope of the restrictive covenant is limited and prohibits Plaintiffs from owning or being involved with a "Competitive Business" that is located in or serves customers within Springboro or any of the six zip codes where Extreme had "Franchised Business" customers during its term.[10] Although Plaintiffs argue that Maryland law enforces only those restrictive covenants where the skills to be restrained are considered "unique," the Court does not agree. Restrictive covenants have been enforced by Maryland courts in other franchise settings including pizza restaurants, *Ledo Pizza System, Inc. v. Singh*, 983 F. Supp. 2d 632, 641 (D. Md. 2013), lawn care services, *NaturaLawn of America, Inc. v. West Group*, LLC, 484 F. Supp. 2d 392 (D. Md. 2007) and frozen desert shops, *ICENY USA, LLC v. M & M's, LLC*, 421 F. Supp. 3d 204 (D. Md. 2019).

Like the Springboro Agreement, the Post-Term Non-Competition covenant in the Beavercreek Agreement is also limited to two years. Although the agreement's restrictive covenant does not specify a geographic scope, Florida law permits a court to modify the restraint. Fla. Stat. § 542.335(1)(c). Plaintiffs also

---

[10] Plaintiffs have not challenged either the duration or geographic scope of the restrictive covenant.

consented in the agreement to a modification of the restrictive covenant if it is determined to be unenforceable due to "its area." Doc. 12-3, PageID#471. Accordingly, the Court will modify the restrictive covenant in the Beavercreek Agreement so that Plaintiffs are not permitted to own or be involved with a "Competitive Business" that is located in or serves customers within Beavercreek or any of the nine zip codes where Extreme had "Franchised Business" customers during its term.

The Court also finds that the Beavercreek Agreement's restrictive covenant has a "legitimate business interest" as defined by Fla. Stat. § 542.335(1)(b). The Washburn Parties acknowledged in the agreement that they were being provided "confidential information" that included "the standards, methods, procedures and specifications of the System, including System Standards and the contents of the Operations Manual" and that this information "is of a proprietary and confidential nature and a trade secret of Franchisor." Doc. #12-3. PageID#459. Plaintiffs further agreed that this information would be used only for purposes of performing under the Franchise Agreements. A legitimate business interest under Florida law is also shown by "specialized training," Fla. Stat. § 542.335(1)(b), and the agreement required the franchisee managers and key employees to attend training both in person and through materials provided by One Hour. Doc. #12-3, PageID##442-446.

Plaintiffs next argue that One Hour breached the Springboro Agreement when it took the 45036 Lebanon, Ohio, territory and breached both Franchise

Agreements when it withheld Extreme's database during negotiations in the fall of 2020. They assert that because these breaches are material, One Hour cannot enforce the Post-Term Non-Competition covenants and thus cannot show a likelihood of success on the merits. Alternatively, they assert that One Hour's enforcement of the restrictive covenants is barred by the doctrine of unclean hands.

Plaintiffs are correct that under the law of both Maryland and Florida, a material breach of either of the Franchise Agreements negates One Hour's enforcement of the Post-Term Non-Competition covenant. *Final Analysis Commc'n Servs., Inc. v. Gen. Dynamics Corp.*, 253 F. App'x 307, 313 (4th Cir. 2007) (under Maryland law, "a material breach by one party to a contract excuses the other party from performance"); *Leighton v. First Universal Lending, LLC*, 925 So.2d 462, 464 (citation omitted) (under Florida law, an employer's breach of the contract is an equitable defense to the enforcement of a non-compete clause). Courts require, however, that "there must be evidence of that breach." *Id.*, at 464.

Here, Washburn admits he was aware shortly after he returned from the One Hour national convention in Dallas, Texas, that the Lebanon, Ohio, zip code was not included in the Springboro Agreement. He raised this issue with Diane Perry, the One Hour franchise consultant, and others in an attempt to obtain an amendment to the agreement. For whatever reason, the Springboro Agreement was never changed to include the 45036 Zip code. Despite the absence of this zip code in the Springboro Agreement territory, Washburn proceeded forward,

18

allegedly investing $50,000 in a leased facility and marketing and advertising in the Lebanon Ohio, area.

"To determine whether a party has waived a contractual right, we look to the words and conduct of that party—not what effect the conduct may have had on the opposing party." *Wright v. Wagner*, 182 Md. 483, 491, 34 A.2d 441 (1943). Because "waiver 'is the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right,'" *Hovnanian Land Inv. Grp., LLC v. Annapolis Towne Ctr. at Parole, LLC*, 421 Md. 94, 122–23, 25 A.3d 967 (2011) (citation omitted), the Court finds that Plaintiffs waived any material breach of the Springboro Agreement by proceeding forward with the agreement despite knowing that it did not include the 45036 Zip code.

Plaintiffs also assert that One Hour's failure to provide them with Extreme's customer data constitutes a material breach. The Franchise Agreements, however, do not show that One Hour had the obligation to do so.  Doc. #12-3, PageID##442-444; Doc. #12-4, PageID##488—491. In fact, the Franchise Agreements state that Extreme, as the franchisee, granted One Hour access to the information in its software database.  Doc. #12-3, PageID##446 and450; Doc. #12-4, PageID#493.

Plaintiffs' final argument, that Defendants' likelihood of success on the merits fails because of the doctrine of unclean hands, is also without merit.  The doctrine does not apply to a breach of contract claim under Maryland law, *Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Kirson*, 525 F. Supp. 3d 628, 636 (D. Md. 2021) (citing *Greentree Series V, Inc. v. Hofmeister*, 114 A.3d 230, 239 (Md. Ct.

App. 2015), and, factually, it does not apply in this case. Maryland law requires the Washburn Parties to show a "a nexus" between One Hour's alleged misconduct in excluding the Lebanon, Ohio, zip code from the Springboro Agreement's territory and customer database dispute and the enforcement of the Post-Term Non-Competition covenant. *Hicks v. Gilbert*, 762 135 Md. App. 394, 400-401, 762 A.2d 986, 990 (Md. Ct. App. 2000) ("a nexus between the misconduct and the transaction" must exist because '[w]hat is material is not that the plaintiff's hands are dirty, but that he dirties them in acquiring the right he now asserts.'") (quotation omitted). No such nexus exists between One Hour's alleged material breach to exclude the Lebanon, Ohio, zip code from the Springboro Agreement and its retention of Extreme's customer database from the enforcement of the restrictive covenants. Under Florida law, Plaintiffs are required to show "egregious facts" to transform a "'failure to comply' into an unclean hands defense." *Congress Park Office Condos II, LLC v. First-Citizens Bank & Trust Co.*, 105 So. 3d 602, 609-610 (Fla. 4th DCA 2013) ("Unclean hands is an equitable defense that is akin to fraud; its purpose is to discourage unlawful activity."). One Hour's refusal to permit the transfer of customer data to it unless it signed a new agreement does not amount to "egregious facts" when the Franchise Agreements require Extreme to supply this information to One Hour and particularly when the parties were allegedly negotiating new agreements.

Accordingly, the Court concludes that One Hour has shown a likelihood of success on the merits for its enforcement of the Post-Term Non-Competition covenants in the Franchise Agreements.

### b. Count I: Breach of Contract – Additional Post-Termination Obligations

One Hour also argues that the Washburn Parties must be enjoined from violating additional post-termination obligations in the Franchise Agreements. These obligations include Plaintiffs' failure to cease the following activities: operation of its present HVAC business, "holding out" of any "new business" as a present or former franchisee of One Hour, use of any components of the One Hour System and of any One Hour Marks or any other identifying characteristics of the System.  One Hour also contends that the Washburn Parties failed to return all copies of its manuals and other confidential information, to assign telephone numbers and websites of its business to One Hour and to notify the telephone company, all listing agencies, and all directory listings of the termination of the Washburn Parties' right to use all telephone numbers associated with Extreme.

One Hour has included a Certification of Samuel Butler, counsel for One Hour.  He states that the URL www.extremesonehour.com redirects customers to Extreme's new website, www.extremeheating.com.  Additionally, he has attached as exhibits a LinkedIn page for Extreme's Google and Yelp reviews which reference "Extreme One Hour Heating & Air Conditioning" and include photographs with One Hour's Mark on the vehicles.  Also included as exhibits are

21

Google photos which also show "Extreme One Hour Heating & Air Conditioning" on vehicles, signs, uniforms and in advertising. Doc. # 12-6, PageID##535-616.

Plaintiffs have responded by stating that although Extreme is operating an HVAC business at the same location where it operated as a One Hour franchisee, all confidential information and Manuals have been returned and that no "components" of One Hour are used in Extreme's business.  Additionally, Plaintiffs acknowledge they no longer have any rights to use any of the Marks or other One Hour identifying characteristics and state that they have spent over $100,000 to do a "top-to-bottom rebranding" since they began business after the termination of the agreements.  Doc. #18-1, PageID##692-693. The Washburn Parties further assert they did not create the LinkedIn page but have now claimed it, removed it and that Yelp was contacted and all the references connecting One Hour to Extreme have been removed.  *Id.*  Plaintiffs also state that while they cannot control Google photos, they will continue to monitor the site to attempt to remove references linking Extreme to One Hour.  Finally, although the Washburn Parties still own the telephone number used when it operated as a One Hour franchisee, Extreme has new telephone numbers that it advertises.

One Hour does not challenge Plaintiffs' statements concerning the taking down of the social media sites and their inability to control Google photographs on the Internet.  They do, however, assert that use of the URL, www.extremesonehour.com, which redirects customers to Extreme's website, constitutes an unauthorized use of their Mark in violation of the Franchise

Agreements' post-termination obligations. Doc. #12-3, PageID#467; Doc. 12-4, PageID#517.  Additionally, they contend that the telephone number Extreme used as a franchisee should be assigned to One Hour pursuant to the terms of the Franchise Agreement, Doc. #12-3, PageID#467; Doc. #12-4, PageID#516, since it is still used by customers to contact Extreme. Moreover, they assert it creates confusion as to whether Extreme is a One Hour franchisee.

Taking the assertions as true, the Court finds that One Hour has a likelihood of success on the merits as to Plaintiffs' breach of the Franchise Agreements concerning the operation of an HVAC business at the location and in the territory of the Beavercreek and Springboro Agreements,[11] use of the of the URL, www.extremesonehour.com., and the failure of Extreme to assign to One Hour the telephone number(s) used by Extreme as a franchisee.

### 2. Count II: Breach of Contract - Owner's Guaranties

One Hour asserts that Washburn is personally liable for all of the breaches under the Franchise Agreements because he "executed Owner's Guaranties for each." Doc. #10, PageID#273; Doc. #10-1, PageID##322 and 324; Doc. #10-2, PageID##372 and 375.  In each of the Guaranties, he "personally and unconditionally" guaranteed payment and performance of every "undertaking,

---

[11] One Hour cites but does not specifically argue that Extreme's operation of its HVAC business is a breach of the post-termination additional obligations in the Franchise Agreements.  However, for the same reasons stated in the discussion of the restrictive covenant, the Court finds that Plaintiffs have breached the terms of the Franchise Agreement and that One Hour has shown a likelihood of success on the merits as to Extreme's operation as an HVAC business.

agreement and covenant" in the Franchise Agreements and further agreed to be personally bound by and liable for any breach in the Agreements that are applicable to "Owners of Franchisee." Doc#10-1, PageID#324; Doc. 10-2, PageID#375. Washburn does not dispute that he executed an "Owner's Guaranty" for each of the Agreements.

Accordingly, based upon the clear language of the Owner's Guaranties, the Court finds that One Hour has shown a likelihood of success on the merits for its enforcement of Washburn's breach of the Owner's Guaranties of the Franchise Agreements.

### 3. Count III: Trademark Infringement

One Hour asserts it has a likelihood of success on the merits for Plaintiffs' infringement on its trademarks under the Lanham Act, 15 U.S.C. § 1114. To prove an infringement claim, One Hour must show: "(1) ownership of a valid, protectable trademark; (2) that the defendant used the mark in commerce and without the registrant's consent; and (3) there is a likelihood of consumer confusion." *Ohio State Univ. v. Thomas*, 738 F. Supp. 2d 743, 749, 263 (S.D. Ohio 2010) (Frost, J.). One Hour has attached several exhibits purporting to show the Washburn Parties use of their Marks on vehicles, signs, uniforms and in advertising. Doc. #12-11. They further argue that Plaintiffs' use of One Hour's trademark in the URL directing customers to Extreme's new website is a violation of the Lanham Act.

Plaintiffs have shown that, with one exception, the use by Plaintiffs of the URL www.extremesonehour.com., used to redirect customers to Extreme's new website, they have not used One Hour's Marks since termination of the Franchise Agreements. This unauthorized use of One Hour's Mark in the URL, however, creates confusion for the consumer as to whether Extreme is a franchisee of One Hour.

For this reason, the Court finds that One Hour has shown an infringement of their trademark, under the Lanham Act, 15 U.S.C. § 1114, concerning Extreme's use of the One Hour Mark in the URL redirecting customers of Extreme to its new HVAC business.

### B. Irreparable Harm

#### 1. Count I: Breach of Contract - Franchise Agreements and Count II: Breach of Contract-Owner's Guaranties

To prevail on its motion, One Hour must also show that it will suffer irreparable injury if the motion is denied. This factor is "indispensable: If the [moving party] isn't facing imminent and irreparable injury, there's no need to grant relief now as opposed to at the end of the lawsuit." *D.T. v. Sumner County Schools*, 943 F.3d 324, 327 (6th Cir. 2019) (citations omitted). The harm that a movant must show to obtain preliminary injunctive relief must be likely in the absence of an injunction, *Winter*, 555 U.S. at 375, and be "both certain and immediate, rather than speculative or theoretical." *Michigan Coalition of*

*Radioactive Material Users, Inc. v. Griepentrog,* 945 F.2d 150, 154 (6th Cir.1991).

Here, the Court finds that absent a preliminary injunction, the injury to One Hour

would be irreparable for its claim in Count I for breach of contract concerning the

Post-Term Non-Competition covenant.

At the outset the Court notes that the Washburn Parties, in both Franchise

Agreements, acknowledged and anticipated that "any violation of the restrictive

covenant would result in irreparable injury" to One Hour and that no adequate

remedy at law was available. Doc. #12-3, PageID#470; Doc. #12-4, PageID#519.

Although this provision in the Franchise Agreements alone may be sufficient, *H.H.*

*Franchising Syst., Inc. v. Aronson*, Case No. 1:12-cv-708, 2015 WL 401343 (S.D.

Ohio Jan. 28, 2015) (Barrett, J.) (finding acknowledgement in agreement of

irreparable injury and no adequate remedy at law sufficient to satisfy irreparable

injury factor), the facts of this case, which are not in dispute, only confirm the

irreparable injury to One Hour.

Extreme operates an HVAC business at the same location, in the same

general territory and with the same customers that it had as a franchisee.  As the

franchisor, One Hour has articulated valid business concerns with the continued

viability of its franchise if the Washburn Parties are permitted to violate the

restrictive covenants. These business concerns include likely consumer confusion,

loss of control of reputation and loss of goodwill. "Loss of customer goodwill

often amounts to irreparable injury because the damages flowing from such

losses are difficult to compute. Similarly, the loss of fair competition that results

26

from the breach of a non-competition covenant is likely to irreparably harm an employer." *Basicomputer Corp. v. Scott,* 973 F.2d 507, 512 (6th Cir.1992); *Economou v. Physicians Weight Loss Centers of Am.*, 756 F.Supp. 1024, 1034 (N.D.Ohio 1991)(franchisor demonstrated irreparable harm due to potential loss of the control of reputation, loss of good will and consumer confusion, supporting imposition of preliminary injunction against former franchisees who opened new competing business). For a franchisor, customer confusion is a critical concern since it "has the potential of leading to damage to the franchisor's tradename and reputation." *Economou*, 756 F. Supp. at 1032. Moreover, because Extreme's location would be in direct competition with One Hour's Cincinnati retail store, as well as any other franchise that may come into the Beavercreek and Springboro territory, the One Hour franchise would be harmed.

For the same reasons that irreparable harm exists for Plaintiffs' violation of the Post-Term Non-Competition covenants, the Court also finds that irreparable injury exists for Plaintiffs' breach of certain post-termination obligations of the Franchise Agreements. These include Plaintiffs' opening of an HVAC business, the use of One Hour's Mark in the URL directing customers to Extreme's new business and the Washburn Parties' failure to assign the franchise telephone number to One Hour. These violations will increase loss of the control of its reputation, loss of good will and create consumer confusion.

Finally, irreparable harm exists for Washburn's breach of the Owner's Guaranties. These guaranties are found in both Franchise Agreements and state,

among other things, that he is "personally bound by, and personally liable for the breach of, each and every provision in the Franchise Documents applicable to Owners of Franchisee." Doc. #10-1, PageID#324; Doc. #10-2, PageID#374.

For the reasons stated above, the Court finds that One Hour has shown that irreparable injury will occur if Plaintiffs are not enjoined pursuant to the terms of the Post-Term Non-Competition covenants in the Franchise Agreements. The Court further finds that irreparable injury will occur if Plaintiffs are not enjoined from operating an HVAC business, using One Hour's trademark in a URL redirecting customers to Extreme's new website and failing to assign Extreme's telephone number to One Hour. Finally, irreparable injury will occur if Washburn's guaranties are not enforced pursuant to the language in the Owner's Guaranty of each of the Franchise Agreements.

### 2. Count III: Trademark Infringement

Based on the evidence before the Court, the use by Plaintiffs of the One Hour trademark in a URL, which redirects customers to Extreme's new website, is a violation of the Lanham Act. Pursuant to 15 U.S.C. § 1116(a), a party seeking an injunction for a violation of its right as a registrant of a mark "shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation. . .or upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction or temporary restraining order." Plaintiffs have not attempted to refute this rebuttable presumption.

Accordingly, the Court finds that irreparable injury exists for One Hour's trademark infringement claim.

### B. Balance of the Equities

In balancing the equities, the Court must consider the harm that would occur to One Hour if a preliminary injunction is not issued for Count I, breach of the Franchise Agreements, Count II, breach of the Owner's Guaranties and Count III, violation of the Lanham Act, as well as the harm the Washburn Parties would suffer if an injunction is issued. Plaintiffs argue that if an injunction is issued, their HVAC business will close, employees will be out of work, trade creditors will suffer a loss and government backed loans will go into default. Although the Court is not unsympathetic to these hardships and the harm it will cause, the evidence shows Plaintiffs are largely, if not solely, responsible for this result.

The evidence shows that Washburn knew the provisions of the Franchise Agreements. He signed the Beavercreek Agreement in February 2009, attended One Hour meetings, utilized their systems, spoke to their consultants and sent his employees for training. In October 2010, 18 months later, he signed the Springboro Agreement. Each Agreement was for a term of 10-years and contained relatively similar provisions. During the period of negotiations concerning renewal of the Franchise Agreements, from the fall of 2020 through July 26, 2021, Plaintiffs had additional time to review and familiarize themselves with their post-termination obligations under the Franchise Agreements.

Concerning Plaintiffs infringement of One Hour's trademark, 15 U.S.C.

§ 1116(a) authorizes the Court to grant injunctions, "according to the principles of

equity and upon such terms as the court may deem reasonable" to prevent a

trademark infringement. *Id.*

One Hour has shown the harm it will suffer if no injunctive relief is granted.

Justin DiBlassio ("DiBlassio"), legal counsel for Authority Brands, Inc., an affiliate

of One Hour and Clockwork, Doc. #12-2, PageID#427, states that One Hour has

spent substantial amounts of time and money to maintain and improve its

franchise system.  This includes

> (1) the maintenance of service quality; (2) the development of methods of
> maintaining quality and uniformity of services provided by its franchise
> operators; (3) the development of uniform designs and markings for
> equipment; (4) the development of promotional materials; (5) the licensing
> of the use of other trademarks of One Hour and other proprietary
> information to One Hour franchisees; and (6) the training and education of
> franchisees and the development of manuals for the proper operation of a
> One Hour Heating & Air Conditioning business.

*Id.* at PageID#429.

He further asserts that One Hour's Marks are "of inestimable value to One

Hour" since they are associated "in consumers' minds" with One Hour's high

quality sales and operating methods and procedures. *Id.*  Because One Hour

intends to do business in the Dayton-area territories with new or existing

franchisees or corporate owned businesses, violation of the Franchise

Agreements and the use by the Washburn Parties will impede these efforts. *Id* at

PageID#430.

Balancing the harms and considering the equities in this case, the Court finds that this third factor weighs in favor of One Hour.

### C. Public Interest

In considering whether the public interest would be served by the issuance of a preliminary injunction, the enforcement of the Franchise Agreements, including the Owner's Guaranties, does not raise any important public policy concern "other than the general public interest in the enforcement of voluntarily assumed contract obligations." *Certified Restoration*, 511 F.3d at 551. In this regard, "[E]nforcement of contractual duties is in the public interest." *Id.* Similarly, enforcement of federal trademark law is also in the public interest.

Accordingly, this final factor also points toward the issuance of the preliminary injunction.

### IV. Conclusion

For the reasons set forth above, the Motion for Preliminary Injunction, Doc. #12, filed by Defendant and Counterclaim Plaintiff, One Hour, and Intervenor and Counterclaim Plaintiff, Clockwork, is SUSTAINED in part and OVERRULED in part.

The Court SUSTAINS the Motion for Preliminary Injunction, Doc. #12, and enjoins Plaintiffs (1) from continuing operation of an Extreme Heating and Air Conditioning business in violation of Section 14.2 Post-Term Non-Competition in the Springboro Agreement, Doc. #12-4, PageID##509-510; (2) from continuing operation of an Extreme Heating and Air Conditioning business in violation of

Section 14.2 Post-Term Non-Competition in the Beavercreek Agreement, Doc. #12-3 PageID#461, with the following modification: that the geographic scope of the restricted location is the Territory defined on Exhibit A, Doc. #14-3, PageID#476, or any zip code where Extreme had Franchised Business customers during the Term of the Agreement; and (3) from violating the Lanham Act, 15 U.S.C. §§114 et seq., by using the One Hour Mark in the URL, www.extremeonehour.com, which redirects customers of Extreme to its new HVAC business. The Court also SUSTAINS the Motion of One Hour and Clockwork requiring Plaintiffs to comply with the following post-termination obligations in the Franchise Agreements to cease: (1) all operations of an HVAC business at the same location where Extreme operated as a One Hour franchisee; and (2) all use of the One Hour Mark in the URL, www.extremeonehour.com, which redirects customers to Extreme's website. The Motion is also sustained requiring Plaintiffs to assign to One Hour the telephone number Extreme used as a franchisee and to notify the telephone company and all directory listings of the termination of their right to use all telephone numbers associated with Extreme.

The Court OVERRULES the Motion for Preliminary Injunction, Doc. #12, requiring Plaintiffs to comply with the following post-termination obligations in the Franchise Agreements: (1) to cease using components of the One Hour System; (2) to return to One Hour all copies of its confidential manuals and other confidential information.

For the reasons set forth in this Decision and Entry, the Court ORDERS that Douglas A. Washburn and Extreme Heating and Cooling, Ltd., and all individuals and entities in active concert or participation with them, (collectively "Washburn and Extreme") are preliminarily enjoined as follows:

1. Washburn and Extreme shall immediately and fully comply with the post-termination obligations contained in Sections 14 and 16 of the Franchise Agreements between Extreme and One Hour. These obligations include the following:

a. Washburn and Extreme shall immediately cease operating the Extreme HVAC business located at 712 North Fairfield Road in Beavercreek, Ohio;

b. Washburn and Extreme shall not, for a period of twenty-four months from the date of their full compliance with this subparagraph 1.b, own or be involved with a business that offers residential heating and air conditioning services competitive with those offered, franchised, or licensed by One Hour located in or serving customers within Beavercreek, Ohio, and Springboro, Ohio, and the following zip codes or any other zip code where Extreme had franchised business customers during the term of their franchise agreements with One Hour:

45305, 45420, 45429, 45430, 45431, 45432, 45434, 45440, 45458,

45066, 45068, 45370, 45419, 45459, 45385;

2. Washburn and Extreme shall immediately cease the use, in any manner whatsoever of the One Hour Mark in the URL redirecting customers of Extreme to its new HVAC business;

33

3. Washburn and Extreme shall take such actions as may be necessary: (i) to cease using and assign to One Hour all telephone numbers used in the operation of Washburn and Extreme's franchise or their competing business; (ii) to notify the telephone company, all listing agencies and all directory listings of the termination of their right to use all telephone numbers associated with the formerly franchised business. Among the telephone numbers associated with the franchise which must be assigned to One Hour are the following: 937-426-7399, 937-426-4807, 937-241-8921, 937-885-5090, 937-476-7697, and 937-426-5553.

4. Washburn and Extreme shall immediately serve a copy of this Order upon all persons in active concert or participation with them in the operation of the competing business and whose participation is required for compliance with this Order, including but not limited to, all persons involved in the Extreme business located at 712 North Fairfield Road in Beavercreek, Ohio.

5. Washburn and Extreme shall file with the Court and serve upon One Hour, within fourteen (14) days after the issuance of this Order, a report in writing and under oath setting forth in detail the manner and form in which they have complied with the injunction.

6. Finally, the Court finds that, in light of One Hour's high likelihood of success on the merits in this case and its financial wherewithal, as well as Washburn and Extreme's contractual agreement in the Franchise Agreements dispensing with the requirement of a bond, no bond is necessary for the issuance of this preliminary injunction.

SO ORDERED.


Date: September 27, 2022

WALTER H. RICE
UNITED STATES DISTRICT JUDGE